# \* Hines *v.* Willcox

### AND

# Stenberg *v.* Willcox.

### (*Nashville.* March 5, 1896.)

1. LANDLORD AND TENANT. *Duties and liabilities as regards dangerous premises.*

   The Court, upon a rehearing of these causes, reaffirms its former decision, that both landlord and tenant must, in the absence of contract by the former to repair or warranting safe condition of the leased premises, alike exercise due care and diligence to ascertain condition of premises and avoid injury to tenant or others from their unsafe condition. If, in such case, the landlord knows of the unsafe condition of the premises, and conceals or misrepresents it, or if by the exercise of due care and diligence he should have known it, he is liable for injury resulting therefrom to his tenant, the latter not being in fault. But if the tenant knew of the unsafe condition of the premises, or by the exercise of due care and diligence might have known it, and thereby avoided the injury, he cannot recover of his landlord. (*Post, pp. 334–336.*)

   Cases cited and approved: 5 N. E. Rep., ——; 155 Mass., 381; 73 Md., 469; 26 Pa. St., 11; 44 Am. Rep., 499; 150 Mass., 288; 162 Mass., 272.

   Cited and disapproved: 26 Am. Dec., 782.

2. SAME. *Landlord's liability to tenant's guest.*

   And a landlord who leases premises to be used as a boarding house, is liable not only to the tenant who is guilty of no fault, but to the guest of the tenant for injuries resulting from unsafe condition of the premises, which was either known to the landlord and by him concealed or misrepresented, or which, by the exercise of reasonable care and diligence, might have been known to him. (*Post, pp. 336–338.*)

\*See original opinions, pp. 148–163 *ante.*—REPORTER.

Hines *v.* Willcox and Stenberg *v.* Willcox.

Cases cited and approved: 59 N. Y., 28; 20 Pa., 111; 60 N. Y., 229; 155 Mass., 381; 73 Md., 469; 80 Me., 62.

---

FROM DAVIDSON.

---

Appeal from Circuit Court of Davidson County. J. W. BONNER, J.

E. A. PRICE, H. PARKS, and J. W. GAINES for Plaintiffs.

R. T. SMITH and R. McP. SMITH for Defendants.

WILKES, J.   In these causes petitions to rehear have been filed and pressed with much earnestness.

The trial Judge in the Court below correctly laid down the law in regard to the tenant, and imposed upon her the risk of the premises if she knew, or by the exercise of reasonable care and diligence could have known, of their dangerous condition. It is complained that this Court imposed upon the landlord a like degree of care in ascertaining whether his premises were in safe condition when he let them. The correctness of the rule and liability of the landlord is not denied when he has actual knowledge of the danger and fails to disclose it, but denied so far as it requires him to exercise reasonable care and diligence to acquaint himself with their condition.

The facts assumed by counsel in arguing this point are worthy of notice. In one portion of his briefs he says: "Neither the landlord nor his agents had any notion [we suppose he means notice or knowledge] of the condition of the porch. They so swear, and there is no contradictory evidence." In another portion of his briefs he says: "The premises were old, and, to my belief, the porch was obviously dangerous at the outset." . . . And again: "The porch was at the outset obviously out of fix. No ordinarily careful person would have used it. That is the simple truth of the case."

We think the evidence tends to show a state of facts between these two extremes, to wit: That the porch was unsafe when the premises were let, partly from the manner of construction and partly from age, and that this was either known to, or by reasonable care could have been known to, the landlord, but it was not so obviously dangerous as to have deterred an ordinarily careful person from using it or seeing its danger. It is said that the landlord's liability to his tenant is more restricted than it is to third persons, and this is unquestionably so, in so far as it rests upon the contract between the parties, and want of care in the tenant, but in this and similar cases there is a separate and distinct ground of liability, depending not upon contract, or want of contract, but upon the obligation the landlord or landowner is under to his tenant, as well as third persons, not to expose them to

danger which he knows, or could know, by the exercise of reasonable diligence. The rule laid down does not place upon the landlord the obligation of an insurer or warrantor by contract, nor does it impose the extreme duty of constant care and inspection, but it does impose upon him the duty of reasonable care and diligence to inform himself of the condition of the property which he proposes to let, and if, when he leases, he knows, or by the exercise of reasonable care and diligence should know, that the premises are dangerous, it is his duty to make them safe before he leases, or inform the tenant of their condition, and if he does not, he must respond to any person not in fault for damages caused by such condition of the premises, whether tenant or third person. Nor does this holding imply, as counsel suggests, that the tenant is thereby entirely relieved from the duty of proper diligence on his part, and that the landlord is virtually made guardian for the tenant. The obligation of the tenant to exercise proper diligence was properly stated by the trial Judge, and there is nothing in the ruling of this Court that can legitimately bear the construction given to it by counsel to relieve the tenant of such care.

The contention in the Stenberg case is mainly that, being a boarder, she was the guest of the tenant, and not a third person in the eye of the law. It suffices to say upon this point, without noting other considerations, that the evidence shows

that the house was let to be used as a boarding house, and recommended by the landlord for that purpose. If it was unsafe for that purpose, which is a *quasi* public purpose, and defendants knew it, or could by reasonable care and diligence have known it, he should respond in damages to any person injured on the premises. The boarder is there as much by invitation of the landlord as of the tenant. She is there, not strictly as a guest, but as a third person, legitimately on the premises on business, for the purpose for which they were let. The rule is, that if the landlord is guilty of *delictum* or negligence, he is liable, otherwise not, and in this view of the case the tenant and his boarder stand upon the same footing, the contract being out of the way. The tenant may have more extensive rights if she expressly contracts for safe premises, and is assured of their safety; and, on the other hand, her rights may be restricted if she is guilty of negligence in ascertaining for herself the condition of the premises when she rented them, or took them knowing them to be unsafe.

The rule, as laid down by this Court, imposes reasonable care and good faith on both landlord and tenant, in the absence of a contract to make the premises safe or a warranty of their condition, and, keeping this rule in view, the tenant and his boarder are entitled to as much protection against the landlord as is the stranger passing along the street or occupying adjoining premises. It cannot be the law

that the owner of a hotel which is in an unsafe condition, known to him to be so, or by reasonable care and diligence he could know, can lease it to a tenant, who exercises reasonable care and diligence, and does not discover the danger, and then escape liability to either the keeper of the hotel or his family or servants or the persons who enter the hotel for its accommodation. What the hotel keeper's liability may be, at the same time, is not a question now before us.

While many of the cases cited in the opinion are cases where the liability was held to exist to third persons, there is no difference between such third persons and the tenant and his servants, the matter of contract and negligence of tenant being out of the way. As is said in *Cowen* v. *Sunderland*, 5 N. E. Rep, there is an exception to the general rule of *caveat emptor* as between lessor and lessee "arising from the duty which the lessor owes the lessee. This duty does not originate directly from the contract, but from the relation of the parties, and is imposed by law."

We quote from Wood on Landlord and Tenant, page 855: "Where there are defects in the premises not open to ordinary observation, of the existence of which the landlord knows, or ought to know, which are dangerous to the person of the tenant, it is his duty to disclose them to the tenant, and if he fails to do so, and the tenant is injured thereby, the landlord is responsible for all the damages that

ensue to the tenant therefrom." Again, page 869, the same author says: "But when the premises, at the time when they are leased, are in so defective a condition as to be, *per se,* a nuisance, especially when they are leased for a *quasi* public use, the landlord is responsible for injuries resulting either to the tenant or third persons lawfully upon the premises therefrom."

The rule laid down by this Court, and, as we think, sustained by authority and reason, is that in the absence of a contract to repair or warranty of condition, both the landlord and tenant must use reasonable care and diligence. If the tenant neglect such reasonable care and diligence to ascertain the condition of the premises, or, knowing their condition, assumed the risk, then he cannot recover against the landlord. On the other hand, if the landlord neglect to use reasonable care and diligence in ascertaining whether his premises are safe, or if he actually know they are unsafe, and conceals or misrepresents their condition, then he is liable, the tenant being in no fault. It is not upon the ground of an insurer or warrantor of condition under his lease contract, but on the ground of the obligation implied by law not to expose the tenant or the public to danger which he knows, or in good faith should know, and which the tenant does not know, and cannot ascertain by the exercise of reasonable care and diligence.

The cases are numerous which use the expressions

laid down in the opinion in this case, that the land-
lord is liable not only for actual knowledge, but
also for reasonable care and diligence in obtaining
such knowledge; not only when he knows, but when
he ought to know of the defects by using ordinary
care and diligence.    As using this expression we
cite, among others, *Martin* v. *Richards*, 155 Mass.,
381; *Bash* v. *Boyce*, 73 Md., 469; *Carson* v. *Godly*,
26 Pa. St., 11; *Coke* v. *Guthkese*, 44 Am. Rep., 499.

In the late case of *Lindsley* v. *Lupton*, 150
Mass., 288, it was held that it was not necessary to
show that the owner had actual knowledge of the
defects.    His duty was that of due care, and igno-
rance of the defect was no defense, in the absence
of such care.

In *Monihan* v. *Allen*, 162 Mass., 272, it was
held that it was the duty of the landlord to inform
the tenant of any hidden defects which could not
be discovered by reasonable diligence on his part,
and of which the defendant ought, for his proper
protection, to be informed, citing quite a number
of other Massachusetts cases.

Mr. Pingrey says, in Section 592 of his work
on Real Estate: ''Of course, if there is a conceded
defect, which renders the premises dangerous, which
the tenant cannot discover by the exercise of reason-
able diligence, of which the landlord has, or ought
to have, knowledge, it is the landlord's duty to
disclose it, and he is liable for an injury which
results from his concealment of it.''    Section 594,

the same author, says: "It is held that the obligation and liability is the same to the tenant's guest and to his servants, and the landlord is liable unless it appears that he did not know, or by reasonable care and diligence could not have known, of the unsafe condition of the premises when he leased them."

Under the principle we have attempted to lay down, the landlord's liability (leaving the contract of lease out of view) is the same to the tenant as to his servant, or his guest or his customer, or his wife or child, or to the stranger passing along the streets, or on the premises for any legitimate purpose.

The only case cited by counsel apparently holding a doctrine contrary to that laid down by this Court, is that of *Brudick* v. *Cheadle*, 26 Ohio. This case is also reported in 50 Am. Dec., 782, and referred to as a peculiar case, and, as we think, very justly criticised as placing the party injured in a very anomalous position. The case is clearly out of line with the current of authority. It may be remarked, however, that in that case the Court said: "Whether the noxious structures existed at the time the lessees entered into possession of the storeroom does not appear."

As illustrative of the application of the rule we have laid down, we cite the following, among other cases, showing when the rule is applied, and as to what persons held applicable: In *Swords* v. *Edgar*, 59 N. Y., 28, a longshoreman in the service of the

tenant sued the owner and recovered. In *Hagerty* v. *Godley*, 20 Pa., 111, a servant of the tenant sued the owner and recovered. In *Carson* v. *Godley*, 26 Pa. St., 11, a customer of the tenant sued the owner and recovered. In *Cæsar* v. *Karutz*, 60 N. Y., 229, the owner was held liable to the child of the tenant. In *Cook* v. *Guthkese*, 44 Am. Rep., 499, the owner was held liable for injuries sustained by a child of the tenant. In *Martin* v. *Richards*, 155 Mass., three cases were tried together, and the owner was held liable for an injury to the child and wife of the tenant. In *Minor* v. *Sharon*, 112 Mass., three cases were tried together, and the owner was held liable for injuries to the tenant's children. In *Bushe* v. *Boyce*, 73 Md., 469, the owner was held liable for injuries to the servant of the tenant. In *Gill* v. *Middleton*, 105 Mass., the owner was held liable for an injury to the wife of the tenant. In *Nugent* v. *Boston*, etc., *R. Co.*, 80 Maine, 62, the owner was held liable to persons rightfully on the premises. In *Nelson* v. *Brewing Company*, L. R., 2 C. P. D., 311, the right of the servant of the tenant to sue was recognized. In *Monyhan* v. *Allyn*, 162 Mass., 272, the right of the child of the tenant to sue was recognized. And Mr. Pingrey, in his work on Real Property, expressly states that there is no distinction in the rule as to the liability of the owner to the tenant, or to the tenant's guest, or to the

22—12 P

tenant's servant.  In each instance he says the rule is the same.

We see no reason or occasion for rehearing the causes upon further arguments or briefs.  The petitioners make no new grounds of defense and lay down no principles that have not already been fully argued by counsel for defendant, and still more fully investigated and considered by the Court.  It could serve no useful purpose to have further argument along lines that the Court does not consider conclusive or material in the case.  The Court is satisfied with its conclusions, and has no doubt of their correctness when properly understood and applied.

The petition to rehear is denied and dismissed.