250

LILLIAN McGUFFEY, Plaintiff in Error, v. LONNIE
DOTLEY, Defendant in Error.—381 S. W. (2d) 585.

Eastern Section.  January 16, 1964.

Certiorari Denied by Supreme Court July 15, 1964.

252

Milligan, Milligan & Hooper, Chattanooga, for plaintiff in error.

Berke & Berke, Chattanooga, for defendant in error.

McAMIS, P. J. This is an action for personal injuries sustained by plaintiff Lonnie Dotley when a step broke on premises owned by defendant. The accident occurred November 2, 1958, about eight months after plaintiff and his family moved into the property under an oral week to week rental agreement.

At the close of all the evidence defendant moved for a directed verdict which was overruled. The present appeal is from a judgment based upon a jury verdict for $7000.00.

A number of assignments of error have been made but in the preliminary statement filed by defendant in this court it is correctly stated that the issues are (1) whether plaintiff carried the burden of showing a defective condition of the premises at the time of the letting, (2) whether the defendant as owner of the premises should have inspected underneath the steps for termite damage and (3) whether the plaintiff was guilty of proximate contributory negligence as a matter of law in using the steps.

Plaintiff is 56 years of age and unlettered, having only a second grade education. His testimony is lacking in clarity. He and his wife testified that when they moved into the property the steps leading from the front porch to the walkway had been painted and appeared to be in good condition. They noticed, however, that they seemed to be "a little weak".

Plaintiff's witness Burkeen who delivered the newspaper to the tenants who had previously occupied the

property testified that before plaintiff moved into the property the steps appeared to be in good condition but he had noticed "they had two or three weak steps in there, one or two little treads seemed to be a little weak".

The proof for plaintiff shows that the tread which broke was the second from the ground and that it was made of wood about one and one-half inch in thickness. About half of this tread had been eaten away by termites working from the under side. The top side had been painted and the termite damage was not discernible from that side. It could have been discovered, however, without removing any of the steps by an inspection of the open space under the steps.

Mr. S. N. Jonakin, a witness for defendant, testified that he was manager of Ferger Brothers, the real estate firm in charge of renting the property; that it had been vacant for four or five weeks before plaintiff moved in and that, in that interval, he made his usual inspection when the house was vacated. He went through and looked around "just inspecting to see the general condition of it and whether it would need anything or not". He says he walked up and down the front steps and felt nothing wrong with them. He did not look under the steps although he thought they were open underneath.

In view of the testimony of plaintiff and his wife and that of Burkeen above mentioned, we think it is clear that the jury could find that the steps were weak from termite damage when the property was let to plaintiff. It was for the jury to say whether this condition could have developed within five weeks or less between the inspection and the letting. It is a matter of common

254

knowledge that termite damage is slow in developing. Glassman v. Martin, 196 Tenn. 595, 269 S.W.(2d) 908.

■ The jury may have concluded from the proof that if the weak condition of the steps was observable by Burkeen who was not making an inspection it should have been detected by defendant's agent, Mr. Jonakin, who made an inspection and that either Mr. Jonakin failed to use due care and diligence in making the inspection or detected the weakness and failed to look for the cause and remedy it or call it to plaintiff's attention. In this connection it should be stated that the jury had before it evidence that defendant was not making any repairs to the property because it was about to be taken over by the City of Chattanooga.

The opinion by Judge Felts, now Mr. Justice Felts, in Pulaski Housing Authority v. Smith, 39 Tenn.App. 213, 282 S.W.(2d) 213, upon a full review of prior Tennessee decisions, announced the following as the principles governing the liability of the landlord:

"So the rule in this State is that 'if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition (provided reasonable care and diligence is exercised by the tenant on his part).' Hines v. Willcox, 96 Tenn. 148, 160, 33 S.W. 914, 916, 34 L.R.A. 824.

"This rule was declared in 1895 and has been observed ever since as the law. Willcox v. Hines, supra [100 Tenn. 538, 46 S.W. 297, 41 L.R.A. 278]; Robinson v. Tate, supra [34 Tenn.App. 215, 236 S.W.(2d) 445]; Manes v.

Hines & McNair Hotels, Inc., 184 Tenn. 210, 214, 197 S.W.(2d) 889; Jolly Motor Livery Corp. v. Allenberg, 188 Tenn. 452, 458, 221 S.W.(2d) 513; Glassman v. Martin, 196 Tenn. 595, 601, 269 S.W.(2d) 908, 910.

"This does not make the landlord an insurer of the safety of the premises, or put upon him the extreme duty of constant care and inspection, but it does place on him the duty to use reasonable care and diligence to inspect the premises to see that they are turned over to the tenant in reasonably safe condition. Hines v. Willcox, supra, 96 Tenn. 331, 34 S.W. 420; Prosser on Torts, 651; Robinson v. Tate, supra, 34 Tenn.App. 232, 236 S.W.(2d) 445; Jolly Motor Livery Corp. v. Allenberg, supra, 188 Tenn. 458, 221 S.W.(2d) 513; Glassman v. Martin, supra, 196 Tenn. 601, 269 S.W.(2d) 908."

As was said in Glassman v. Martin, supra, the law does not impose upon the landlord the duty of constant care and inspection or make him an insurer of the safety of the premises. It does "impose upon him the duty of reasonable care to inform himself of the condition of the property" at the time of the letting.

Defendant relies upon the Glassman case to sustain the insistence that the motion for a directed verdict should have been sustained. While in some respects similar, the facts of that case and this are quite different. They are similar in that in both the injury occurred due to termite damage to steps used by the tenant. They are different in that it does not appear in the Glassman case that the damage was apparent from visual inspection. As pointed out in the opinion, it could only have been discovered by punching the timber with an instrument such as an ice pick or screw driver. The outward appearance

of the steps gave no evidence of their latent defective condition. Of greater significance, in that case the landlord took with him a carpenter and in this case the inspection consisted of walking through the house and down the steps. And, as above pointed out, the jury could have found from the evidence that the steps were noticeably weak. From this the jury may have concluded that the landlord should have looked under the steps and that if such an inspection had been made the defect would have been discovered.

■ Defendant also relies upon Diamond v. Drew, 17 Tenn.App. 488, 68 S.W.(2d) 955. In that case the tenant was injured due to a rotten sleeper under the floor which could not have been discovered without taking up the floor. The court held the landlord was under no duty to discover a latent defect of that nature and, on that ground, directed a verdict. Here, the jury could find that defendant knew or should have known of the weakness the cause of which could have been discovered by stooping and looking in the open space under the steps. Because of the factual differences that case is not controlling here.

■ In this case, there is material evidence supporting a finding that the steps were defective at the time of the letting and that defendant in the exercise of ordinary care and diligence should have discovered this defective condition.

■ Was the plaintiff guilty of proximate contributory negligence as a matter of law in using the steps?

We think the question was also for the jury. In Wilenzick v. Austin, 180 Tenn. 591, 177 S.W.(2d) 548, the plaintiff was the wife of the tenant. Her husband testi-

fied that the floor where the plaintiff fell was ''squeaky and appeared weak''. In holding that the trial court correctly submitted the question of contributory negligence to the jury, the Supreme Court said:

''We think clearly, that under the facts of the case before us here, where the only evidence was that the floor was 'squeaky' and 'apparently weak', that the question of whether or not the use of the floor in its condition, constituted contributory negligence, was one of fact for the jury, and did not constitute contributory **negligence** as a matter of law.''

In the later case of Hannibal v. Standridge, et al. (1957 unreported) the Supreme Court held that the tenant is not guilty of contributory negligence unless it appears that he not only knew of the defective condition of the premises but also realized or should have realized the danger. The Court also quoted from the opinion in Wilenzick v. Austin, supra, and the Missouri case [Graff v. Lemp Brewing Co., 130 Mo.App. 618, 109 S.W. 1044] there quoted from as follows:

''If it can be said that plaintiff reasonably was justified in assuming that the danger was not imminent, his conduct in using the floor in its defective condition should be treated as an issue of fact to go to the jury * * *.''

The Court charged the jury as requested by defendant that the degree of care required of the plaintiff was exactly the same as that required of defendant. Apparently, the jury concluded defendant knew or should have known of the defect and that defendant's failure to make a reasonable inspection proximately caused the plaintiff to fall; that the steps were painted and appeared to be in good condition and the fact that they appeared to be

a little weak was not sufficient to bring home to plaintiff a realization of the danger of continuing to use them.

"The question of contributory negligence, as well as the question of negligence, is ordinarily for the jury. Even though the facts be undisputed, if intelligent minds might draw different conclusions as to whether, under circumstances conceded, the conduct of a plaintiff was that of an ordinarily prudent man, the matter should be left to the jury. The court should draw no inference when in doubt, but only in those cases where the evidence is without material conflict, and such that all reasonable men must reach the same conclusion therefrom. It is only in cases where the evidence is susceptible of no other fair inference that the court is justified in instructing the jury, as a matter of law, that the plaintiff has been guilty of contributory negligence which would bar' his recovery." Osborn et al. v. City of Nashville, 182 Tenn. 197, 185 S.W.(2d) 510. See also Grizzell v. Foxx, 48 Tenn. App. 462, 348 S.W.(2d) 815.

■ Also assigned as error is the refusal of the court to again charge defendant's special request that the plaintiff owed the same duty as defendant to exercise ordinary care when the jury returned for further instructions on the question of contributory negligence.

We can not say this was error. Certainly, there is no affirmative showing that it was prejudicial as required by T.C.A. sec. 27-117.

We find no error. Affirmed.

Cooper, J., and Milligan, Special Judge, concur.